**Joseph R. JONES, Plaintiff,**

v.

**WOLFSON, Superintendent of H.D.M. of Rikers Island et al., Defendants.**

**No. 78 Civ. 2803 (CHT).**

United States District Court,
S. D. New York.

April 30, 1981.

Joseph R. Jones, plaintiff pro se.

## OPINION

TENNEY, District Judge.

Plaintiff Joseph Jones seeks to appeal a decision issued by this Court that granted summary judgment to the defendants. That decision was issued on December 23, 1980 and the judgment was entered on December 31st. Federal Rule of Appellate Procedure ("Rule") 4(a) requires that a notice of appeal be filed within 30 days after the entry of judgment. The Rule also provides that: "The district court, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed." Jones' request for leave to appeal must be denied because his notice of appeal was filed on March 30, 1981, almost 90 days after the entry of judgment and more than 30 days after the expiration of the prescribed time.

*Background*

The tortuous history of this litigation has been described in the four prior Opinions in this case and will not be repeated here.[1] In an Opinion dated December 23, 1980, this Court stated that "no factual issues remain to be litigated and the defendants are entitled to summary judgment." A judgment was officially entered on December 31, 1980 and recorded on the docket sheet for this action.[2] Copies of the decision were mailed to the parties in accordance with the Court's usual practice. Jones' name and address is listed on the first page of the Opinion under "Appearances." The court copy of the Opinion bears the stamp indicating that copies were sent to the parties of record.

On March 6, 1981, Jones filed a memorandum entitled "Third Opposing Papers To The Alleged Memorandum By the Court of August 13, 1980." Jones argued that summary judgment should not be granted to the defendants, made reference to an earlier Opinion in this case, and claimed that this Judge was "highly prejudiced against the plaintiff." No mention was made of the December 23, 1980 Opinion that granted summary judgment to the defendants and directed that judgment be entered. In light of the possibility that Jones did not receive his copy of that decision, another copy was sent to him by certified mail on March 17, 1981 with a letter explaining that the decision closed the case and that the second copy was prompted by his recent memorandum. The signed certificate of receipt was returned to the Court.

Shortly after, the plaintiff filed a motion for a default judgment, a notice of appeal, and an application to proceed in forma pauperis. Jones also sent a letter to this Court questioning its procedures and a letter to several judges of the Court of Appeals for the Second Circuit asserting that this Judge was prejudiced and that the December 23rd

---

1. See Opinions dated December 23, 1980; August 13, 1980; March 6, 1980; May 30, 1979. The Decision of May 30, 1979 was affirmed in part, remanded in part, by the Second Circuit Court of Appeals. 614 F.2d 1287 (2d Cir. 1979).

2. Under Rule 4, the date of the entry in the docket, not the date of the order or opinion, starts the running of time for appeal. *Yaretsky v. Blum*, 592 F.2d 65, 66 (2d Cir. 1979).

decision was not sent to him until the end of March 1981. According to Jones, the March 17th letter, which explained that a copy of the decision had been sent to him at the time it was issued, was a "lie."

Confronted with this accusation, the Court attempted to determine whether Jones had in fact received a copy of the December 23rd decision soon after it was issued. An officer of the Correspondence Department at Green Haven Correctional Facility, where Jones is presently incarcerated, confirmed that Jones received mail from these chambers on January 5, 1981. In a letter to the Court dated April 23, 1981, Corrections Officer E. Boulanger described the entry made on Jones' correspondence record and enclosed a xerox copy of the relevant portions of the document. The Court assumes that it can rely on the presumptive regularity of the facility's mail distribution procedures, which have handled, without incident, volumes of mail from this Court to the plaintiff. Accordingly, in the absence of any evidence to the contrary, the Court concludes that Jones likely received a copy of the December 23rd decision during the week of January 5, 1981.

The New York Law Journal was also consulted in a further attempt to make certain that Jones had had notice of the decision. The entry of an order in Jones' case was reported in the Law Journal on December 26, 1980. Of course, not all *pro se* litigants can be expected to read the Law Journal. Yet Jones has previously indicated to the Court that he watches for developments in his case in the Law Journal. In a letter to the Court dated February 16, 1980, Jones inquired about the removal of "his case" from the calendar published in the Law Journal. In response, Jones was informed that the case he mentioned in his letter, *Jones v. United States*, was not his case and that his case would be reported as *Jones v. Wolfson*. The Court cannot know—and does not mean to sug-

gest—that Jones necessarily had notice of the December 23rd decision from the Law Journal. It is worth noting, however, that the decision was reported there and that Jones has previously looked to the Law Journal for information about his case.[3]

*Discussion*

As stated above, the Court assumes that Jones either had notice of the December 23rd decision or that his failure to become apprised of the decision did not result from any "excusable neglect or good cause" that would warrant extending the time to appeal. *See Fase v. Seafarers Welfare & Pension Plan*, 574 F.2d 72, 76–77 (2d Cir. 1978). The Court's denial of Jones' motion for leave to appeal is not, however, based upon that ground.

Under Rule 4, an extension of time to appeal can be granted only "upon motion filed not later than 30 days after the expiration of the time prescribed." As stated in the Advisory Committee Notes that follow the Rule, one of the purposes of the 1979 Amendments was to "make it clear that a motion to extend the time must be filed no later than 30 days after the expiration of the original appeal time." The Second Circuit elaborated on this point in *Moore v. Nelson*, 611 F.2d 434, 436 n.4 (2d Cir. 1979):

In this Circuit if a motion to extend the time for filing notice of appeal is filed within the 30-day extension period, a district court may grant the motion after the expiration of such period. *Matter of Orbitec Corp.*, 520 F.2d 358 (2d Cir. 1975); *Stirling v. Chemical Bank*, 511 F.2d 1030, 1032 (2d Cir. 1975); *C-Thru Products, Inc. v. Uniflex, Inc.*, 397 F.2d 952 (2d Cir. 1968); *see also Pasquale v. Finch*, 418 F.2d 627 (1st Cir. 1969). But though it may act on the motion after the 30-day extension period, the District Court may not extend the time for filing the notice of appeal by more than 30 days allowed by Rule 4. *Matter of Orbitec Corp., supra; Dyotherm Corp. v. Turbo Machine Co.*, 434 F.2d 65 (3d Cir. 1970). Thus, the

---

**3.** In addition, the Clerk has informed the Court that as a matter of course, a copy of a decision, as opposed to a post card merely stating that a decision has been filed, is sent to a *pro se* litigant after the decision is filed.

District Court had no authority to permit the filing of a notice of appeal later than 90 days after entry of judgment, or March 11, 1979.

The correct procedure is to file the notice of appeal with the motion to extend time for filing and in no event later than the 30-day extension period. *Matter of Orbitec Corp., supra; Stirling v. Chemical Bank, supra; Pasquale v. Finch, supra; see also Linabary v. Maritime Overseas Corp.*, 376 F.Supp. 688 (S.D.N.Y. 1973). Otherwise an appellant has to rely on the doubtful proposition that the motion to extend time for filing notice of appeal can be considered to be a notice of appeal. *Compare Pasquale v. Finch, supra, with Dyotherm Corp. v. Turbo Machine Co., supra,* and *Linabary v. Maritime Overseas Corp., supra.*

In *Linabary v. Maritime Overseas Corp., supra,* a case cited by the court of appeals in *Moore,* Judge Weinfeld denied the plaintiff's untimely request to extend his time to file a cross notice of appeal on the ground that excusable neglect had not been shown. Judge Weinfeld also stated, however, that "even if there were an adequate showing of 'excusable neglect,' the Court's power under Rule 4(a) to extend the time for filing a notice of appeal is limited to ... sixty days from the date judgment is filed ... and the time for filing cannot be extended beyond that date." 376 F.Supp. at 689. Similar circumstances are present here and the same conclusion applies. In fact, *Linabary* presented a stronger case for granting the extension than the case at bar because the plaintiff there had filed his motion to extend within the second 30 day period (less than 60 days from the date judgment was filed) but the court refused to consider the motion as a notice of appeal. Here, Jones filed nothing that could be construed as a motion to extend or a notice of appeal within sixty days after the entry of judgment.

A strikingly similar case was recently decided by the First Circuit. The plaintiff in *Silvia v. Laurie,* 594 F.2d 892 (1st Cir. 1979), was an inmate who had brought a section 1983 action against prison officials. His claim had been dismissed and, under Rule 4, an appeal had to be filed by July 8, 1978. According to the First Circuit:

Silvia urges that he was unable to comply with the provisions of Rule 4(a) because he did not receive notice of the district court judgment until September 1978. Failure to receive notice can constitute a "showing of excusable neglect" sufficient to allow a district court to extend the time for appeal by an additional thirty days, but such an extension here could not have gone beyond August 7, 1978. *Id. See* 9 Moore's Federal Practice ¶ 204.13[1], at 969–71 (2d ed. 1975). This exception obviously offers no help to the plaintiff, who allegedly did not learn of the judgment until even the August 7 date had passed.

While it is tempting to overlook the requirements of Rule 4 when a party—particularly one who is incarcerated—fails to receive notice of judgment, we cannot do so. That a civil appeal be filed within the time specified by the rule is a prerequisite to our jurisdiction. That is, the time limits of Rule 4 are not merely procedural requirements that can be waived at the discretion of the court, but rather are limits on this court's power to review decisions of the district courts. *E. g., Browder v. Director, Department of Corrections,* 434 U.S. 257, 264–65, 98 S.Ct. 556 [560–61], 54 L.Ed.2d 521 (1978); *Martinez v. Trainor,* 556 F.2d 818, 819 (7th Cir. 1977); *see United States v. Robinson,* 361 U.S. 220, 228–29, 80 S.Ct. 282 [287–88], 4 L.Ed.2d 259 (1960); *Spound v. Mohasco Industries, Inc.,* 534 F.2d 404, 410–11 (1st Cir.), *cert. denied,* 429 U.S. 886, 97 S.Ct. 238, 50 L.Ed.2d 167 (1976). *But see* 9 Moore's Federal Practice ¶ 204.02[2], at 908–11 (2d ed. 1975). While the application of this rule may lead to apparently harsh results in some cases, it serves important interests of finality. *Browder,* 434 U.S. at 264, 98 S.Ct. 556 [at 560]. Moreover, we doubt that any injustice has resulted here. Having read over plaintiff's complaint, which told of his transfers between and experiences in var-

ious state and federal prisons, it appears that the district court was entitled to dismiss it for the reasons stated in its order.

*Id.* at 893.

This Court agrees with the views expressed by the First Circuit. Although the result in this case may appear harsh, it is mandated by the Rule. Accordingly, plaintiff's request for leave to file an untimely appeal is denied.[4]

So ordered.

---

4. In light of this ruling, the Court need not rule on plaintiff's *motion for leave* to appeal in forma pauperis.